# EXHIBIT 1

to

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR SETTLEMENT PURPOSES, DIRECTING THE ISSUANCE OF CLASS NOTICE, AND SCHEDULING FINAL APPROVAL HEARING**

_____

SETTLEMENT AGREEMENT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NASSER RAZMYAR, individually and on behalf of others similarly situated,<br><br>      Plaintiff.<br><br>      v.<br><br>BOMBAY CLUB, INC et al.,<br><br>      Defendants. |

Civil Action No.:  1:15-cv-807-ABJ

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") was made and entered into by, between, and among Nasser Razmyar ("Razmyar"), on behalf of himself and the putative class members, and Defendants the Bombay Club, Inc. ("Bombay Club") and Knightsbridge Management ("Knightsbridge") and John Does 1-10 (collectively, "Defendants"), and is conditioned upon the Court's entry of a Final Order.

WHEREAS, Knightsbridge is a privately held company founded in 1989 by restaurateur Ashok Bajaj.  Knightsbridge is a holding company for eight restaurants in the District, including The Bombay Club.  Each restaurant within the Knightsbridge group is set up as a separate legal entity and is run independently.

WHEREAS, Bombay Club employed Razmyar, lead Plaintiff in this Action, from July 2013 through April 2015 as a waiter.  Razmyar asserts six counts in the Complaint alleging, *inter alia*, that Defendants failed to minimum wages because Defendants allegedly subtracted $.76 per day that he worked to pay for Bombay Club's tip tracking software program, Defendants allegedly mandated that tipped employees pool approximately twenty percent (20%) of their tips

1

with management for any table of 12 customers or more and that Defendants failed to pay overtime wages to him in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 et seq.; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, et seq.

WHEREAS, Plaintiff has asserted claims against Defendants in a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 et seq. (collectively, the "FLSA Collective Action");

WHEREAS Plaintiff has asserted claims against Defendants in a class action under the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, et seq.  (the "District Action");

WHEREAS the FLSA Collective Action and the District Action are pending in the United States District Court for the District of Columbia in the same case, which is denominated 1:15-cv-807-ABJ (the "Lawsuit").

WHEREAS, Plaintiff seeks compensatory damages in the Lawsuit resulting from, *inter alia*, the alleged violations, as well as liquidated damages, attorneys' fees, and whereas Plaintiff has made a claim for such damages and fees;

WHEREAS, the Razmyar, the putative class members and Defendants (collectively, the "Parties") desire to resolve the Lawsuit, without admission of liability by Defendants, in order that the Parties might avoid the expense and inconvenience of further litigation. The parties agreed to participate in a voluntary mediation of these claims before Magistrate Judge Alan Kay on July 31, 2015.  Over the ensuing six-month period, the parties exchanged a significant amount

of information and data, engaged in several follow-up in-person and telephonic meetings and had separate follow-up calls with Magistrate Judge Kay.

WHEREAS, all members of the Rule 23 Settlement Class are potential members of the FLSA Collective Action; it is the intent of the Parties that all putative members of the Rule 23 Settlement Class who do not opt out, as defined herein, receive payment for overtime wages owed; and all opt-in Plaintiffs of the FLSA Collective Action receive liquidated damages equal to the amount of overtime owed.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the Parties agree to the following:

**Section 1.**     **Certification of Class in the District Action**

1.1.     Solely for the purposes of settling the Lawsuit, the Parties stipulate and agree that the requisites for establishing a class action certification for the District Action have been met and are met, and therefore stipulate to class certification for settlement purposes.  The parties agree to certify a class in the District Action that includes:  "all non-exempt current and former persons who worked for Bombay Club as waitstaff and/or bartenders between June 2, 2012 to June 2, 2015, who were not paid overtime wages for hours in excess of 40 hours per workweek (the "Rule 23 Settlement Class").

1.2.     In addition, the parties stipulate and agree, for the purposes of settlement that:

a.     The Rule 23 Settlement Class is so numerous as to make it impracticable to join all members;

b.     The Rule 23 Settlement Class is an ascertainable class;

c.     There common questions of law and fact including, but not necessarily limited to, whether or not the Rule 23 Settlement Class was paid overtime for all hours worked;

d.    Razmyar's claims are typical of the claims of the members of the Rule 23 Settlement Class;

e.    Plaintiff's counsel, listed below, should be appointed as Class Counsel and will fairly and adequately protect the interests of the Rule 23 Settlement Class:

> Brendan Klaproth
> Klaproth Law PLLC
> 406 5th Street, NW,
> Suite 350
> Washington, DC 20001.

f.    Class Counsel has diligently and thoroughly investigated the facts of this Lawsuit and researched the legal issues involved, including an extensive review of relevant documents and data.  Based on his own independent investigation and evaluation, Class Counsel believes that settlement for the consideration and other terms set forth in this Agreement are fair, reasonable, and adequate, and in the best interests of Razmyar and the Rule 23 Settlement Class. While Class Counsel believe the claims asserted in the Action have merit, he recognizes and acknowledges that it would cost a lot of money, take a long time, and impose substantial burdens on the Rule 23 Settlement Class to fully prosecute this Action.  Class Counsel also has taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Lawsuit.

g.    The prosecution of separate actions by individual members of the Rule 23 Settlement Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.

h.    Questions of law and fact common to the members of the Rule 23 Settlement Class predominate over questions affecting individual members in the Rule 23 Settlement Class,

and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

      1.3.     The parties agree that Rule 23 certification of the Rule 23 Settlement Class is for settlement purposes only.  Nothing in this Agreement shall be construed as an admission or acknowledgment of any kind that any class should be certified in the Lawsuit or in any other action or proceeding.  In the event this Agreement is not approved by the Court, fails to become effective or is reversed, withdrawn or materially modified by the Court, (a) the proposed settlement will be null and void; (b) the certification of the Rule 23 Settlement Class, or any agreement to certify such a class, will automatically be null and void and the fact of it shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and (c) neither party will be deemed to have waived any claims, objections, defenses or arguments with respect to the issue of class certification or maintenance of the Lawsuit as a class action.

      1.4.     <u>Settlement Payments to Class Members in the District Action</u>

      a.     Defendants will pay each individual who is a member of the Rule 23 Settlement Class, in full and complete satisfaction of all released claims, an amount equal to one-hundred percent (100%) of the total overtime allegedly owed to each individual during the applicable period ("Overtime Wages Owed").  Attached hereto as Addendum A is a list of the individuals who are a putative member of the Rule 23 Settlement Class, along with the specific amounts to be paid to each individual, should they remain in the class and do not opt-out.

      b.     The determination of the individuals owed, number of the amount of overtime and number of hours worked pursuant to this section of the Agreement was made based on the Bombay Club's records and extensive cross-checking by Plaintiffs' counsel.  Prior to the

Lawsuit, Bombay Club issued checks to several people it had identified, based on the records it had available at that time, as being owed overtime.  Most of these checks were deposited and any sums deposited will be appropriately deducted and/or offset any amounts owed as indicated in Addendum A.  The information set forth in Addendum A is final and binding for purposes of the settlement of the Lawsuit.  With respect to those individuals whose offset results in an overpayment or a zero balance, no additional checks will be issued because the Overtime Wages Owed has been satisfied, however, these individuals are still eligible to opt-out of the Rule 23 Settlement Class should they choose and to opt-in to the FLSA Collective Action, as described below.

    c. The "applicable period" for each Plaintiff in the Rule 23 Settlement Class is from June 2, 2012 to June 2, 2015.

    d. For the purpose of calculating overtime payments owed, it is understood that the parties multiplied the alleged number of hours worked over 40 in a one-week period by 150% of the individual's hourly wage during the applicable period.

    e. 100% of the payment called for in this section will constitute back wages, allegedly owed to the individuals at issue.

**Section 2.**  **Certification of Class in the FLSA Collective Action**

  2.1. For settlement purposes only, the parties will stipulate to the Court that the class may be certified as an FLSA opt-in collective action.  The parties agree that Rule 216(b) certification for settlement purposes under the lenient standard applied to settlements is in no way an admission that class certification is proper under the more stringent standard applied for

litigation purposes, and that evidence of this limited stipulation for settlement purposes only will not be deemed admissible in this or any other proceeding.

    2.2. <u>Settlement Payments to Plaintiffs in the FLSA Collective Action</u>

        a.    Defendants will pay each individual who has "opted-in" to the FLSA Collective Action in full and complete satisfaction of all released claims, liquidated damages in an amount equal to the Overtime Wages Owed ("Liquidated Damages"). For example, if "Plaintiff A" is eligible to receive payment under the District Action for Overtime Wages Owed in the amount of $1,000.00, provided he or she does not opt-out of the Rule 23 Settlement Class, should "Plaintiff A" opt-in to the FLSA Collective Action, he or she would receive a Liquidated Damages amount of $1,000.00, for a total settlement amount of $2,000.00. Any offset applied to individuals in the Rule 23 Settlement Class will not apply in calculating the amount of Liquidated Damages such persons are eligible to receive. Attached hereto as Addendum B is a list of the individuals who may "opt-in" to the FLSA Collective Action, along with the specific amounts to be paid to each individual should they opt-in to the FLSA Collective Action.

        b.    The "applicable period" for each individual in the FLSA Collective Action is from June 2, 2012 to June 2, 2015.

        c.    The determination of the who is owed, number of the amount of overtime and number of hours worked pursuant to this section of the Agreement was made based on the Bombay Club's records and extensive cross-checking by Plaintiffs' counsel. The information set forth in Addendum B is final and binding for purposes of the settlement of the Lawsuit, unless 30 days of the date on which the notice is mailed, the class member produced paystubs showing that he or she is owed more than the amount of the overtime  compensation indicated in Addendum B.

     d.   For the purpose of calculating the amount of liquidated damages owed to each individual opt-in to the FLSA Collective Action, it is understood that the parties used the specific amounts to be paid to each individual contained in Addendum A, specifically the amount listed as Overtime Wages Owed and no deduction is made for any offset based on checks previously issued prior to this Agreement.

     e.   100% of the payment called for in this section will constitute liquidated damages.

     f.   Payment shall be made by first-class mail to each person who has opted-in within 30 days after the Court's final approval of the Settlement.   Notwithstanding the foregoing or anything to the contrary in this Agreement, if Plaintiff's Counsel does not receive a signed original of Addendum C from an individual who has "opted in" to the FLSA Collective Action, that individual will not receive the payment described in Section 2.2 of this Agreement.

**Section 3.** <u>**Notice to the Rule 23 Settlement Class and Each Potential Member of the FLSA Collective Action**</u>

3.1.   Within 14 days after entry of an Order approving this Agreement, Defendants' counsel shall send by first-class mail to each member of the Rule 23 Settlement Class and to each potential member of the FLSA Collective Action notice (the "Notice") of the members rights in the form prescribed by Exhibit 2 to the Plaintiff's Motion for Preliminary Approval of Settlement.

3.2. For individuals in the Rule 23 Settlement Class, the Notice shall provide a mechanism to opt-out of the class within thirty (30) days, measured from the date the Notice is postmarked..  Any individual who fails to opt-out of the Class within the 30-day period or deposits or cashes the check that accompanies the Notice shall be deemed to be a member of the

Rule 23 Settlement Class and must release and waive all claims included in the District Action as specified in Section 5.2.

3.3.  All members of the Rule 23 Settlement Class are potential members of the FLSA Collective Action.  Accordingly, the Notice shall provide an opportunity for all members of the Rule 23 Settlement Class to opt-in to the FLSA Collective Action by submitting an opt-in form and the Release provided in Addendum C within 30 days measured from the date the Notice is postmarked.

**Section 4.    Distribution of Checks to Current and Former Employees in the FLSA Collective Action and Members of the Rule 23 Settlement Class**

4.1    Payments made to those individuals who either "opted-in" to the FLSA Collective Action or who are members of the Rule 23 Settlement Class and who are employed by the Company as of the Effective Date of this Agreement shall be made in the following manner:  The Company shall provide checks directly to the individuals described in Section 1.4 and 2.2 for the payments called for in these Sections of the Agreement.  The checks will state in English that (1) the checks must be cashed at a financial institution and (2) by signing and cashing the check the payee acknowledges that he/she has read the Notice in the Lawsuit, including the general release of claims contained in the Notice, and understands its contents.

4.2    Payments made to those individuals who either "opted-in" to the FLSA Collective Action or who are members of the Rule 23 Settlement Class and who are not employed by the Company as of the Effective Date of this Agreement ("Former Employee Group") shall be made in the following manner:

(a)    The Company shall provide checks directly to the individuals described in Section 1.4 and 2.2 for the payments called for in these Sections of the Agreement.  The checks will state in English that (1) the checks must be cashed at a financial institution and

9

(2) by signing and cashing the check the payee acknowledges that he/she has read the Notice in the Lawsuit, including the general release of claims contained in the Notice, and understands its contents.  Within five (5) business days of the mailings, Counsel for Defendants shall notify Plaintiffs' counsel of the date of the mailing.  Defendants shall pay all costs associated with the mailing of the checks.

(b)      Notwithstanding the foregoing, or anything to the contrary in this Agreement, the Defendants shall not be required to issue or cause to be mailed a check to any member of the Former Employee Group whose Notice or check is returned to the Company as "address unknown" or otherwise undeliverable, unless the Defendants have received a corrected address for any such payee within ninety days  of date on which Notice and/or checks were mailed.  If the United States Postal Service returns any Notice Form to the Defendant's counsel with a forwarding address, the Defendants' counsel  will re-mail the Notice Form to the forwarding address. *Id.*

(c)      Any checks mailed by the Defendants that are returned as "address unknown" shall be deemed null and void and shall revert back to and become the sole property of the Defendants.  In the event that check is returned with "address unknown" for a member of the Rule 23 Settlement Class, a check shall be reissued by Defendant only if the member provides an updated address to Plaintiff's Counsel or Defendants within 90 days of mailing the Notice and check.

(d)      All settlement checks shall become null and void on the 90th day after the date on which they are mailed.  The monies represented in those checks that are not cashed as of the 90th day shall revert back to and become the sole property of the Defendants.

(e)     75 days after the Notice and checks for Overtime Wages Owed are mailed to the Rule 23 Settlement Class, Defendants counsel shall provide a list to Plaintiffs' counsel, verified under oath by Defendants, of all Overtime Owed checks that have been returned or that have not been cashed within 60 days of mailing.  Defendants shall also submit this list, under oath, to the Court.

(f)     75 days after the checks for Liquidated Damages are mailed to all opt-in plaintiffs in the FLSA Collective Action, Defendants counsel shall provide a list to Plaintiffs' counsel, verified under oath by Defendants, of all Liquidated Damages checks that have been returned or that have not been cashed. Defendants shall also submit this list, under oath, to the Court.

**Section 5.     Releases**

5.1     In exchange for the payments described in Sections 2.2, the "opt-in" plaintiffs, and each of them, agree to execute the release and covenant not to sue attached hereto as Addendum C.  Execution of the Release contained in Addendum C is a prerequisite to receiving payment under Section 2.2.

5.2     Members of the Rule 23 Settlement Class (i.e., any class member who does not opt out of the District Action and/or deposits the check for Overtime Wages Owed) will be bound by the following release pursuant to Fed. R. Civ. P. 23:

> In exchange for the settlement payment, I, for myself and for anyone who has or who obtains legal rights or claims from me, forever release and discharges Bombay Club, Inc. and Knightsbridge Management, their owners, officers, directors, employees, agents, assigns, representatives, attorneys, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the lawsuit styled Nasser Razmyar v. Bombay Club et al., Civil Action No. 1:15-cv-00807, U.S. District Court for the District of Columbia, from any causes of action in connection with my employment at the Bombay Club, , for overtime or unpaid wages under the District

of Columbia Wage Payment and Wage Collection Act, any common law claim for compensation and overtime compensation, breach of express or implied contract, quasi contract, quantum meruit, breach of duty of good faith, promissory estoppel, and unjust enrichment, that were or could have been asserted in the Lawsuit and that arose during the period between June 2, 2012 to June 2, 2015 ("Released Claims").  Notwithstanding the foregoing, members of the Rule 23 Settlement Class are not releasing any other types of legal claims except those claims asserted in <u>Nasser Razmyar v. Bombay Club et al.</u>, Civil Action No. 1:15-cv-00807 and/or relating to their wages while working at Bombay Club.

This Release includes and encompasses therein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys, if any who have represented me or with whom I have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein.

**Section 6. <u>Attorneys' Fees and Costs</u>**

6.1     Defendants will issue a check made payable to Klaproth Law PLLC in the amount of Forty-thousand and four hundred and six dollars ($40,600) which represents the total amount of attorneys' fees and costs associated with the Litigation including effectuating this Agreement. The attorneys' fees calculation is based on 100 hours of attorney time at $406.00 per hour, however, calculation and/or the basis for the attorney's fees payment is for settlement purposes only.  Nothing contained herein shall constitute a waiver from either party as to an upward or downward departure of a reasonable rate for attorney's fees, nor shall it constitute agreement that the rate of $406 per hour is the proper or reasonable rate for services rendered by Plaintiffs' counsel in this case.  Under no circumstances shall Defendants be liable for any attorneys' fees in excess of $40,600 in this case, regardless of the amount of time spent by Plaintiffs' counsel to effectuate the Parties agreement and/or seek Court approval of the settlement in this case.  In other words, the Parties intend that Plaintiff's attorneys' fees be capped at $40,600 in total for this Litigation, including effectuating the terms and spirit of this Agreement.

6.2    The payment to Plaintiff's counsel called for in Section 6.1 shall be made as follows:  $40,600 shall be made payable to "Klaproth Law PLLC" within twenty-one (21) days of the Court's final approval of this Agreement.

**Section 7.  Other Provisions**

7.1    Class Representative Enhancement Award and Non-Disparagement. Defendants will pay Plaintiff Nasser Razmyar an additional $500.00 above the amount listed in Addendum A for his participation as class representative in the Lawsuit including reviewing pleadings, participating in mediation and reviewing discovery materials and for his agreement to not disparage Defendants, including, but not limited to, Bombay Club, Inc. and Knightsbridge Management, their owners, officers, directors and employees.  In exchange for the enhanced award, Razmyar further agrees not to contact any member of the Rule 23 Settlement Class and will rely on the Notice issued as the sole communication regarding the rights and obligations of the class members.

7.2    No Admission of Liability.  This Agreement is not an admission of liability; it does not constitute any factual finding or legal precedent; and it may not be used as evidence in any proceeding, except in an action alleging a breach of this Agreement or to enforce the provisions of this Agreement.

7.3    Voluntariness.  Each Plaintiff hereby acknowledges that he or she understands the terms of this Agreement and is entering this Agreement voluntarily.

7.4    Confidentiality by Counsel and Class Representative Nasser Razmyar.  Counsel for neither party will initiate contact with the press about this case or its resolution, and if asked, will say only that the matter has been resolved to the mutual satisfaction of both parties.

7.5     <u>Parties to Bear Fees and Costs</u>.  Except as specifically provided herein, the parties to this Agreement shall bear their own attorneys' fees, expenses and costs incurred as a result of or in association with the Lawsuit.

7.6     <u>Severability</u>.  The provisions of this Agreement are severable.  If any provision is held invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

7.7     <u>Entire Understanding</u>.  This document constitutes the entire understanding and agreement between the Parties.  Any modification of the Agreement must be in writing signed by both Parties.

7.8     <u>Modification</u>.  This Agreement may not be modified in any manner, except in writing signed by each of the parties hereto.

7.9     <u>Joint Participation and Negotiation of the Agreement</u>.  The Parties have had the advice of legal counsel and the opportunity to review, comment upon, and negotiate this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party.  This Agreement shall be construed in light of the fact that the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

7.10    <u>Counterparts</u>.  This Agreement can be executed in counterparts.

## ADDENDUM A

| Class Member | Overtime Wages Owed | Offset Amount | Settlement Payment |
|---|---|---|---|
| Razmyar, Nasser | $5,779.64 | | |
| Herrera, Diego | $1,311.79 | | |
| Kaya, Mutlu | $4,415.95 | | |
| Kay, Brian | $   115.88 | | |
| Asghedom, Micael | $   300.82 | | |
| Basak, Tuncay | $3,420.31 | $802.38 | $2,617.93 |
| Teleksaw, Endreas | $3,675.33 | $2,847.07 | $828.26 |
| Watson, Robert | $4,795.32 | $4,600.00 | $195.32 |
| Roomi, Roland | $1,571.20 | $222.11 | |
| Kumar, Pankaj | $   135.07 | | |
| Ziahgam, Amir | $   316.75 | | |
| Asmare, Suliana | $    47.23 | | |
| Dsouze, Severino | $   151.43 | $172.29 | $-20.86* |
| Fernandez Callao, Leon | $1,702.47 | $1632.73 | $69.74 |
| Ranasinghe, Janaka | $   493.20 | $545.64 | $-52.44* |
| Atalay, Beycan | $4,414.57 | $3286.94 | $1127.63 |
| Loutari, Toufik | $    29.40 | $29.40 | $0.00* |
| Darry, Ahmed | $     1.11 | | |

---

* Due to the overpayment, Severino Dsouze will not receive a check for Overtime Wages Owed.  This does not affect his ability to opt-in to the FLSA Collective Action.
* Due to the overpayment, Janaka Ranasinghe will not receive a check for Overtime Wages Owed.  This does not affect his ability to opt-in to the FLSA Collective Action.
* Due to the zero balance, Toufik Loutari not will not receive a check for Overtime Wages Owed.  This does not affect his ability to opt-in to the FLSA Collective Action.

**ADDENDUM B**

| Class Member | Liquidated Damages |
|---|---|
| Razmyar, Nasser | $5,779.64 |
| Herrera, Diego | $1,311.79 |
| Kaya, Mutlu | $4,415.95 |
| Kay, Brian | $ 115.88 |
| Asghedom, Micael | $ 300.82 |
| Basak, Tuncay | $3,420.31 |
| Teleksaw, Endreas | $3,675.33 |
| Watson, Robert | $4,795.32 |
| Roomi, Roland | $1,571.20 |
| Kumar, Pankaj | $ 135.07 |
| Ziahgam, Amir | $ 316.75 |
| Asmare, Suliana | $ 47.23 |
| Dsouze, Severino | $ 151.43 |
| Fernandez Callao, Leon | $1,702.47 |
| Ranasinghe, Janaka | $ 493.20 |
| Atalay, Beycan | $4,414.57 |
| Loutari, Toufik | $ 29.40 |
| Darry, Ahmed | $ 2.22 |

**ADDENDUM C**

   In exchange for the settlement payment I am receiving in connection with <u>Nasser Razmyar v. Bombay Club et al.</u>, Civil Action No. 1:15-cv-00807, U.S. District Court for the District of Columbia, (the "Lawsuit"), I for myself and for anyone who has or who obtains legal rights or claims from me, forever release and discharge Bombay Club, Inc. and Knightsbridge Management, its owners, officers, directors, employees, agents, assigns, representatives, attorneys, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit, from any and all claims and causes of action asserted in the Lawsuit and/or in connection with my employment at the Bombay Club, of any kind whatsoever, whether arising under federal, state or other applicable law, that I have or may have, known or unknown, for overtime or unpaid wages that were or could have been asserted in the Lawsuit and that arose during the period June 2, 2012 to June 2, 2015 ("Released Claims").  The Released Claims include, but are not limited to any and all claims under the Fair Labor Standards Act, the District of Columbia Minimum Wage Revision Act, the District of Columbia Wage Payment and Wage Collection Act, any common law claim for compensation and overtime compensation, breach of express or implied contract, quasi contract, quantum meruit, breach of duty of good faith, promissory estoppel, and unjust enrichment.  This release includes and encompasses therein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys, if any who have represented me or with whom I have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein.

PRINT NAME:  _____

SIGNATURE:  _____

DATE:  _____